UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN T. JOHNSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:09-cv-4104 |
| § | |
| AT&T MOBILITY, L.L.C., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is AT&T Mobility L.L.C.'s ("Defendant" or "ATTM") Motion to Compel Arbitration. (Doc. No. 16.) Having considered the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendant's Motion to Compel Arbitration should be granted.

I.  **BACKGROUND**[1]

On December 24, 2009, Stephen T. Johnson ("Plaintiff") filed a class action lawsuit in this Court on behalf of himself and all similarly situated Texas consumers who were allegedly wrongfully taxed for Internet services by ATTM. Plaintiff contends that the first $25 of any monthly charge for Internet access services, which include ATTM's wireless data plans, is exempted from sales tax under Texas state law. *See* Tex. Tax Code § 151.325. Notwithstanding the statutory exemption, Plaintiff alleges that ATTM has charged and continues to charge its Texas data plan consumers state and local taxes on such monthly charges.

Plaintiff has brought this suit to recover a refund of the taxes paid, or in the alternative, to obtain an assignment of ATTM's right to pursue a tax refund claim directly from the Texas Comptroller of Public Accounts. *See* Tex. Tax Code § 111.104(b). Plaintiff has also sued

---

[1] All facts are undisputed unless otherwise indicated.

ATTM for violations of the Texas Deceptive Trade Practices Act ("DTPA"), for breach of contract, for injunctive relief, and for damages stemming from ATTM's alleged refusal to timely consent to grant Plaintiff an assignment.

The Court briefly stayed proceedings while the Judicial Panel on Multidistrict Litigation ("JPML") ruled on ATTM's motion to transfer the case to a single federal district court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. After the JPML declined to include the present action in the multidistrict litigation, ATTM moved the Court to compel Plaintiff to arbitrate his claims in accordance with the arbitration agreement contained in ATTM's Terms of Service. According to ATTM, Plaintiff first accepted the terms in 2008 by signing the store's electronic signature-capturing device when he purchased a phone from an ATTM store and activated it for service on ATTM's network. Plaintiff subsequently entered into at least four more ATTM wireless agreements, all of which ATTM argues require Plaintiff and ATTM to arbitrate "all disputes and claims between [them]." The agreement's terms further specify that arbitration must be conducted on an individual rather than class-wide basis. Plaintiff does not dispute that he signed an arbitration agreement with ATTM. Rather, he argues that the agreement does not cover the present dispute and that, even if the agreement were broadly construed, it is unenforceable on several grounds.

## II. ANALYSIS

In deciding whether to compel arbitration of a dispute, the Court is required to use a two-step inquiry. "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal citation omitted). The Court does not consider the merits

2

of the underlying action when conducting the two-step inquiry. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

### A.     Scope of the Arbitration Agreement

When determining whether the parties agreed to arbitrate the dispute, there are two considerations: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Will-Drill Res., Inc.*, 352 F.3d at 214 (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). As there is no dispute that the parties entered into a valid agreement to arbitrate, the Court will turn to the language of ATTM's Terms of Service to determine whether it encompasses the instant dispute.

Plaintiff argues that the tax issue in this case does not come within even a broad reading of the parties' arbitration agreement. The dispute between the parties, Plaintiff contends, does not concern cellular service issues or charges, or even ATTM as a commercial actor. Rather, his claims are against ATTM in its special capacity as an agent of the State of Texas. This feature distinguishes the present lawsuit from those that would be included under the arbitration agreement's admittedly broad language. Plaintiff urges that even broad clauses have their limits. *See Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009). In this case, he claims, it would be unreasonable, inequitable, and oppressive for the Court to conclude that consumers would agree to give up their right to administrative and judicial review of whether a tax was wrongfully collected from them.

"In view of the policy favoring arbitration, we ordinarily 'resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration.'" *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (citing *Neal v. Hardee's Food Sys., Inc.*,

3

918 F.2d 34, 37 (5th Cir. 1990)). "[A] valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.*

When the arbitration agreement uses phrasing such as, "any claims," "arising out of," "in relation to," and "in connection with," to mandate arbitration, courts generally characterize them "as broad arbitration clauses capable of expansive reach." *See Pennzoil Explor. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967)). Such "broad" arbitration clauses "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* The Fifth Circuit has explained that, when parties agree to an arbitration clause covering "[a]ny dispute . . . arising out of or in connection with or relating to" an agreement, they "intend the clause to reach all aspects of the relationship." *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998).

The relevant agreement in ATTM's Terms of Service reads: "AT&T and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us, whether based in contract tort, statute, fraud, misrepresentation or any other legal theory. . . ." (Decl. of Richard J. Rives, Exs. 1-4, Doc. No. 18.) Thus, as the language encompasses "all disputes and claims" "arising out of" or "relating to" the agreement, the Fifth Circuit instructs that the agreement is a broad one capable of expansive reach.

4

Plaintiff's allegation that ATTM wrongfully collected taxes from him and from other similarly situated consumers surely arises out of or relates to an aspect of the relationship between Plaintiff, a consumer, and ATTM, a retailer and collector of sales tax. Indeed, the agreement's language does not limit binding arbitration to disputes regarding the provision of wireless services. It specifically provides that all disputes and claims arising out of or relating to *any aspect* of the relationship must be arbitrated. There is no exception for the sales tax collection portion of the transaction between consumers and ATTM.[2] Thus, the Court finds that Plaintiff's claims arising from the alleged wrongful collection of taxes by ATTM fall within the broad language contained in all four versions of the Terms of Service to which Plaintiff agreed. Having established that Plaintiff consented to arbitrate the present dispute, the Court must analyze whether any federal statute or policy renders the claims non-arbitrable.

### B.    Enforceability of the Arbitration Agreement

Section 2 of the Federal Arbitration Act ("FAA") provides that both pre-dispute and post-dispute arbitration agreements within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, an agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005). Indeed, the United States Supreme Court has emphasized that "state law, whether of legislative or judicial origin, is applicable" to determining the validity of an arbitration agreement, so long as "that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."

---

[2] The Court agrees that even broad arbitration agreements are not boundless. Indeed, the Court could imagine a dispute between Plaintiff and ATTM that might be outside even the broad language of the agreement – for instance, perhaps if Plaintiff were injured after being struck by an ATTM vehicle. But, the dispute at issue in the case does not present such a scenario.

5

*Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987). Courts "may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The practical effect of Section 2 of the FAA therefore is to preclude states from singling out arbitration provisions and placing them on a different footing than other contracts. *Id.*

Under Texas law, contracts, including arbitration agreements, are valid unless grounds exist at law or in equity for revocation of the agreement. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). The burden of proving such grounds, such as fraud or unconscionability falls on the party opposing the enforcement of the contract. *Id.*

### 1. Unconscionability

Plaintiff argues that the agreement to arbitrate the present tax-related dispute is both procedurally and substantively unconscionable under state law. "Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)).[3] Courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating its validity. *In re Halliburton Co.*, 80 S.W.3d at 572.

---

[3] The parties disagree about whether a contract must be both substantively and procedurally unconscionable to be unenforceable as a matter of Texas law. Although the Texas Supreme Court has never specifically held that both types of unconscionability are required, at least one state appellate court has suggested that the party seeking to avoid arbitration must generally make such a dual showing. *See Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ. App.—Texarkana 1975, no writ). The Fifth Circuit has interpreted the language in *Wade* as requiring a plaintiff to prove both types of unconscionability. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988). As Plaintiff points out, however, the Texas Supreme Court recently refused to enforce an arbitration provision solely on the grounds of substantive unconscionability. *See In re Poly-America, L.P.*, 262 S.W.3d at 350-353. The Court need not attempt to resolve the apparent ambiguity in Texas state contract law, as Plaintiff has demonstrated the existence of neither procedural nor substantive unconscionability.

### a. Procedural Unconscionability

Procedural unconscionability challenges the fairness of the contract formation process. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988). Under Texas law, arbitration agreements are not inherently procedurally unconscionable, even if they might be considered contracts of adhesion. *See Carter*, 362 F.3d at 301 ("In Texas, there is nothing per se unconscionable about arbitration agreements; indeed, parties claiming unconscionability bear the burden of demonstrating it."); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90-91 (Tex. 1996) (unequal bargaining power alone does not defeat an agreement to arbitrate). Indeed, some form of oppression and unfairness must taint the negotiation process leading to the agreement's formation. *El Paso Nat. Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61 (Tex. App.—Amarillo 1998), *rev'd on other grounds*, 9 S.W.3d 309 (Tex. 1999); *see also In re Palm Harbor Homes Inc.*, 195 S.W.3d at 679.

Although Plaintiff argues that the agreement he signed with ATTM is procedurally unconscionable, he fails to provide support for such a contention. There is no evidence in the record that the process through which Plaintiff entered into the agreement with ATTM was unfair or oppressive. Plaintiff had the choice of wireless service providers, but chose to contract with ATTM despite the arbitration agreement contained in its Terms of Service. No evidence has been offered to suggest that deception or other unethical business practices influenced Plaintiff's decision to enter into the agreement. Thus, the Court finds that the Texas courts' stringent standard for establishing procedural unconscionability has not been met in this case.

### b. Substantive Unconscionability

With regard to substantive unconscionability, "[a] contract is unenforceable if, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly-America, L.P.*, 262 S.W.3d at 348 (quoting *FirstMerit Bank*, 52 S.W.2d at 757 (internal quotations omitted).

Plaintiff argues that the Texas Supreme Court's recent holding in *Poly-America* renders the instant arbitration agreement substantively unconscionable. *Poly-America* holds, Plaintiff contends, that arbitration clauses cannot interfere with a legislatively crafted system of deterrence necessary to the nondiscriminatory and effective operation of a statutory scheme. Plaintiff concludes that enforcing the present arbitration agreement, which prevents Plaintiff from pursuing relief on a class-wide basis, would result in a waiver of his substantive statutory rights and remedies. It would also undermine the statutory deterrent purpose of the DTPA to which, Plaintiff claims, class-wide relief and the required monitoring of such claims by the Texas Attorney General are integral.[4] Plaintiff also asserts that the arbitration agreement is grossly one-sided insofar as it gives ATTM a unilateral right to seek review of the same issues to which Plaintiff is confined exclusively to an arbitral forum.

The relevant arbitration provision does indeed prevent Plaintiff from pursuing claims on behalf of other consumers. Although the Court believes this represents a significant restriction, the Texas Supreme Court has held that class-wide relief is merely a procedural device that does not "enlarge or diminish any substantive rights or obligations." *Henry Schein, Inc. v. Stomboe*, 102 S.W.3d 675, 693 (Tex. 2002). As a result, Texas courts have specifically held that agreements to arbitrate on an individual basis are not substantively unconscionable under state

---

[4] Plaintiff initially cast this argument as supporting the procedural unconscionability of the arbitration agreement. As ATTM pointed out in its reply brief, however, Plaintiff's objection is to the provisions of the arbitration agreement, not its formation, and it is therefore a substantive unconscionability argument.

8

law. *See AutoNation USA Corp. v Leroy*, 105 S.W.3d 190, 200 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). As the Court explained in *AutoNation*, "[t]he Texas Supreme Court has . . . stressed that procedural devices such as . . . class actions, may not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action. Accordingly, there is no entitlement to proceed as a class action. *Id.* (internal citations and quotations omitted). The Fifth Circuit has also "rejected an argument that an arbitration clause prohibiting plaintiffs from proceedings collectively was unconscionable under Texas law." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 (5th Cir. 2004); *see also Carter*, 362 F.3d at 298, 301.

Plaintiff argues that the Texas Supreme Court's holding *Poly-America* disturbs this established rule with regard to the remedial scheme created by the Texas Legislature in the DPTA. The *Poly-America* court explained that an arbitration agreement covering statutory claims is valid under Texas law only if it "does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'" 262 S.W.3d at 337, 349. The *Poly-America* case dealt with an arbitration agreement that "eliminate[d] two types of remedies available under the anti-retaliation provisions of the Worker's Compensation Act, prohibiting the arbitrator from ordering reinstatement or awarding punitive damages." 262 S.W.3d at 352. The court found that the elimination of these important remedies impermissibly undermined the Legislature's carefully-crafted deterrent regime. *Id.* at 353.

Plaintiff reads this holding broadly, essentially arguing that an agreement to waive *any* statutory right will not be enforced if it interferes with the deterrent purpose of a statutory scheme. The court, however, held that the elimination of the *substantive* rights and remedies

available to plaintiffs under the Worker's Compensation Act impermissibly undermined the goals of the statute such that the agreement was rendered substantively unconscionable. Notwithstanding that the DPTA expressly contemplates the availability of class-wide relief, Texas courts, as well as other courts interpreting Texas law, have consistently held that class actions are procedural devices, and do not implicate *substantive* rights. *See, e.g., Henry Schein, Inc.*, 102 S.W.3d at 693; *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000); *Sherr v. Dell, Inc.*, No. 05 CV 10097(GBD), 2006 WL 2109436, at *7 (S.D.N.Y. July 27, 2006). Thus, *Poly-America* is inapposite. The Court concludes that, under Texas state law, the unavailability of class-wide relief does not render the parties' agreement substantively unconscionable.

Plaintiff also argues that the agreement is so one-sided as to render it substantively unconscionable. The agreement is unfair, Plaintiff contends, because under its terms he would be bound by the arbitrator's adverse decision, whereas ATTM could pursue a claim against the state comptroller in the event the arbitrator decided against the company. The Court is persuaded, however, that the disparity in available review is not a function of the arbitration agreement itself, but of Texas state law, which provides ATTM recourse against the comptroller in the event it is ordered to issue a refund to Plaintiff. Indeed, if ATTM sought reimbursement from the State, and the comptroller denied the company's request, it would then have the right to seek judicial review of the comptroller's decision. By contrast, if Plaintiff were to lose before the arbitrator, he would be unable to appeal the substance of the ruling. By Plaintiff's own admission, however, this result stems from the Texas legislature's prohibition of Texas consumers from making direct claims with the Texas comptroller for a refund of wrongfully paid taxes. *See* Tex. Tax Code § 111.104(b) ("A tax refund claim may be filed with the comptroller

10

only by the person who directly paid the tax to this state or by the person's attorney, assignee, or other successor.") Because ATTM directly paid the taxes to the State of Texas, it is able to bring a claim against the comptroller and appeal that decision if it loses.

By contrast, Plaintiff may seek a refund or assignment only from ATTM, the retailer who collected the tax. This would be true, however, whether Plaintiff proceeded against ATTM in arbitration or in a judicial forum. Thus, in essence, what Plaintiff objects to is the fact that the substance of the arbitrator's decision is not appealable to a judicial forum, a feature which is equally applicable to both parties under the agreement in this case. Plaintiff presents no persuasive arguments that, by themselves, the terms of the agreement to arbitrate are so one-sided as to render the agreement unconscionable.

### 2. Plaintiff's Other State Law-Based Arguments

The United States Supreme Court has held that Section 2 of the FAA preempts conflicting state laws that would render arbitration agreements unenforceable. Indeed, "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Perry*, 482 U.S. at 489. The national policy favoring arbitration applies in state as well as federal courts and forecloses state attempts to undercut the enforceability of arbitration agreements. *Preston v. Ferrer*, 552 U.S. 346, 352 (2008). The FAA's displacement of conflicting state law is "now well-established," *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995), and has been repeatedly reaffirmed. *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2006); *Doctor's Associates, Inc.*, 517 U.S. at 684-685; *Perry*, 482 U.S. at 489.

Thus, although arbitration agreements may be invalidated based on "such grounds as exist at law or in equity for the revocation of any contract," the FAA prevents states from

requiring that claims be heard in a judicial forum. Plaintiff makes several arguments that Texas state law precludes the enforcement of the present arbitration agreement. The state law he cites, however, is precisely the kind of anti-arbitration law that is preempted by Section 2 of the FAA.

Plaintiff first argues that the Texas Legislature has precluded the enforcement of all consumer arbitration agreements where the amount in controversy is less than $50,000 unless the agreement is signed by the consumer's attorney. *See* Tex. Civ. Prac. & Rem. Code § 171.002(a)(2),(b). Because Plaintiff's as well as the purported class members' claims are all below this statutory threshold, Plaintiff argues that the arbitration agreements are not enforceable under Texas law.

The Texas Supreme Court and the Court of Appeals for the Fifth Circuit, however, have held that the statute Plaintiff cites is preempted by the FAA. *See, e.g., Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009); *Freudensprung v. Offshore Technical Servs. Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005). Indeed, by its express terms, the provision is intended to undercut the enforceability of arbitration agreements and therefore impermissibly contravenes Section 2 of the FAA.

Second, Plaintiff argues that the Uniformity Clause of the Texas Constitution, Article VIII, Section 1, which expressly prohibits disparate tax treatment of similarly situated Texans, categorically prohibits arbitration of tax disputes. Plaintiff relies on *Hays County*, which invalidated a state statute that allowed a "taxpayer to unilaterally transfer the determination of his claim . . . to a non-judicial proceeding that he may require shall remain confidential and concealed, even from the court that is expected to enforce the arbitration award." *Hays Cnty. Appraisal Dist. v. Mayo Kirby Springs, Inc.*, 903 S.W.2d 394, 397 (Tex. App.—Austin 1995, no writ). The court explained that "[t]he ultimate interpretation and enforcement of article VIII,

requiring that ad valorem taxation be equal and uniform and according to market value, is a judicial function. The judicial function may be abridged, if at all, only by an adequate statute . . . . [The present statute] is not an adequate statute." *Id.* The court noted that its decision should not be understood as stating a view that arbitration is impossible under the statutory provisions for the judicial review of appraisal-review board valuations . . ." *Id.*

To the extent that the decision *Hays County* requires a judicial forum for all tax-related disputes, notwithstanding otherwise valid private agreements to arbitrate, it would be preempted by Section 2 of the FAA.[5] Indeed, in *Perry*, the United States Supreme Court held that "clear federal policy places § 2 of the [FAA] in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way." 482 U.S. at 491. Texas courts may not likewise place tax disputes off limits to arbitration.

### 3. Plaintiff's Constitutional Arguments

Plaintiff's final argument against the enforceability of the arbitration agreement is that it violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment protects liberty and property interests only against invasion by a state. Therefore, a plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury. *See Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004) (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)). A cognizable claim under the Equal Protection Clause also

---

[5] The Court is not convinced that the *Hays County* holding went so far as to preclude the enforcement of private agreements to arbitrate. The court passed only on the validity of a state statute that allowed an appellant to transfer unilaterally to arbitration the appeal of a tax appraisal order. There are a number of important differences between the posture and circumstances in *Hays County* that undermine its applicability to the present case; namely, the fact that the statute did not require the parties' agreement before arbitration became binding.

requires state action. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982); *Doe v. Rains Cnty. Independent School Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

Plaintiff argues that "[b]y collecting a wrongful tax from Plaintiff and then relegating him to seeking a post-deprivation refund from a private arbitrator, the State, directly and acting through its collection agent, violates Plaintiff's Federal Due Process rights." In *McKesson v. Div. of Alcoholic Bev. & Tobacco*, Plaintiff contends, the United States Supreme Court held that a taxpayer who is not afforded an adequate pre-deprivation procedure for avoiding the payment of an improper tax, is entitled as a matter of due process to a post-deprivation procedure that provides meaningful backward-looking relief. 496 U.S. 18, 31 (1990). States are afforded great flexibility in satisfying the requirements of due process in the field of taxation so long as the state law provides a "clear and certain" remedy. *Nat'l Priv. Truck Council, Inc. v. Okl. Tax Comm'n*, 515 U.S. 582, 587 (1995).

Plaintiff's argument is not that ATTM should be treated as a state actor for purposes of the Fourteenth Amendment. He claims that the *State of Texas*, through its collection agent, ATTM, has violated his rights by compelling him to seek a refund in an arbitral forum. The State of Texas, however, has not compelled Plaintiff to seek a refund through an arbitral forum; rather, Plaintiff *agreed* to arbitrate any claims arising between him and ATTM. Plaintiff real grievance with the State appears to be to the provision of Texas law that requires him to seek a refund from the retailer who collected it rather than from the comptroller. Indeed, it is the convergence of this statute with Plaintiff's agreement to arbitrate all claims with ATTM that produces the resulting requirement that he arbitrate his tax claim. Had Plaintiff not agreed to arbitrate all claims with ATTM, he would be able to seek compensation or an assignment of rights from ATTM in a judicial forum.

Because a retailer is a private actor, Plaintiff's Due Process and Equal Protection claims do not meet the threshold requirement that the alleged injury be the product of state action. Plaintiff's attempt to circumvent this deficiency by casting his argument in terms of the State's actions also fails because the State is not responsible for the conduct about which Plaintiff complains–the fact that he is forced to arbitrate his claims against ATTM. Indeed, Plaintiff improperly conflates the relief he seeks from ATTM—*i.e.*, compensation for taxes ATTM allegedly should not have collected—with the relief he seeks from the State of Texas, *i.e.*, a refund of the taxes allegedly not owed. The State's decision to force consumers to seek redress from the retailer, however, does not render Plaintiff's private agreement to arbitrate all claims with ATTM unenforceable.[6]

### III. CONCLUSION

The Court finds that Plaintiff signed a valid, enforceable arbitration agreement covering the claims that are the subject of this lawsuit. As such, ATTM's Motion to Compel Arbitration is **GRANTED** and the case is hereby stayed pending arbitration.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 21st day of December, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[6] The Court would note that it is uncomfortable with the prevalence of arbitration provisions in consumer agreements, and the consequent forfeiture of the consumer's day in court. The law is, however, well-developed and clear. The Court cannot circumvent it.